UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| F.F., | |
| Plaintiff, | |
| | CIVIL ACTION FILE |
| v. | |
| | NO. |
| MATHAV INC. d/b/a SHERWOOD MOTEL, GOVINDJI PATEL, MANJUBEN PATEL, | |
| Defendants. | |

**COMPLAINT**

COMES NOW Plaintiff in the above-styled action and files her Complaint as follows:

1.

For approximately two months during October and November 2016, Plaintiff, a 16-year-old girl (who turned 17-years old during this time), was unlawfully harbored, raped, and repeatedly sex trafficked at the Sherwood Motel located at 7517 Tara Blvd, Jonesboro, Georgia 30326. F.F. brings this suit to hold the Defendant Motel and its owners civilly liable for their role in such activity. Given the nature of the case, Plaintiff is identified in this Complaint by her initials to prevent public

disclosure of her name. Plaintiff's counsel will disclose F.F.'s full name to Defendants and their counsel as soon as an appropriate protective order is in place.[1]

2.

Defendant MATHAV, INC. d/b/a Sherwood Motel (hereinafter referred to as the "Corporation", the "Defendant" or the "Motel") is a Georgia corporation. The Corporation was administratively dissolved by the Georgia Secretary of State on September 7, 2018. However, pursuant to O.C.G.A. § 14-2-1421(c) "a corporation administratively dissolved continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business and affairs..." Additionally, pursuant to O.C.G.A. § 14-2-1421(d) "[t]he administrative dissolution of a corporation does not terminate the authority of its registered agent." The registered agent for the Corporation is Govindji Patel, who upon information and belief may be served at 7023 Krishna Ln., Morrow, Clayton County GA 30260.

3.

Pursuant to O.C.G.A. § 14-2-1407(3), a claim against a dissolved corporation may be enforced against the corporation to the extent of its undistributed assets, or if the assets have been distributed, against the shareholders of the corporation to the

---

[1] Contemporaneously with this Complaint, Plaintiff filed a Motion for Protective Order and Leave to Proceed Anonymously because the allegations in the Complaint, which include child sex trafficking, are intimate and personal in nature and raise concerns for F.F.'s own personal safety.

extent of their pro rata share of the claim or the corporate assets distributed to them in liquidation, whichever is less. Here, upon information and belief, Defendants GO-VINDJI PATEL and MANJUBEN PATEL are shareholders of the Corporation and have liability for the dissolved Corporation as set forth above.

4.

Defendant Govindji Patel is a resident of the State of Georgia and may be served at his personal residence located at 7023 Krishna Ln., Morrow, Clayton County GA 30260.

5.

Defendant Manjuben Patel is a resident of the State of Georgia and may be served at his personal residence located at 7517 Tara Blvd., Jonesboro, Clayton County, GA 30236.

6.

Defendants have each been properly served with process in this action.

7.

Jurisdiction and venue are proper herein.

8.

At all times relevant herein, Defendants owned, operated, maintained, controlled, managed, and/or were responsible for securing the Sherwood Motel located at 7517 Tara Blvd., Jonesboro, GA 30236, from which Defendants benefited financially.

9.

Defendants knew or should have known of Plaintiff's trafficking at the Motel for numerous reasons, including, but not limited to the following:

(a)    The Motel was a small, single story motel with all room doors on one side of the building that faced an open parking lot. People parking in the parking lot and going into and out of the Motel rooms were all easily visible.

(b)    Plaintiff was harbored, falsely imprisoned, and trafficked at the Motel for approximately two months. The Motel employees observed Plaintiff on numerous occasions.

(c)    During this time, Plaintiff was typically sold to multiple buyers per day. Different men would make short visits the Motel room each day where Plaintiff was being sold. The traffic into and out of Plaintiff's room occurred openly and obviously.

(d)    The Motel employee who cleaned the Motel rooms had a friendly relationship with Plaintiff's trafficker. The Motel employee would come into the room and hang out with the trafficker often, and the Motel employee even invited the trafficker and Plaintiff into another Motel room to do a drug deal with the trafficker. The cleaning employee also took bribes from Plaintiff's trafficker and other Motel

guests who were engaged in illegal activity. As an example, the Motel cleaning employee would accept drugs from Plaintiff's trafficker in exchange for not interfering with the trafficker's sex trafficking operation or in exchange for trying to get other Motel guests to buy drugs from the trafficker. Also, in exchange for drugs, the Motel cleaning employee would always bring extra cleaning supplies and towels to the room, as Plaintiff constantly needed extra towels for showering after being sold repeatedly for sex each day.

(e)     Similarly, another one of the Motel employees who worked at the front desk saw that Plaintiff was forced to go down the street from the Motel to a nearby gas station on foot and solicit buyers to accompany her back to the Motel. The Motel employee would serve as a lookout and make sure not to be confrontational with Plaintiff, her trafficker, or any buyer. As long as the Motel employee was paid for the room each day, the employee would help make sure the trafficker could stay at the property and continue the operation without any problems. The motel employee would not ask any questions as long as they were getting paid the room. The motel employee would often walk around the property and monitor what was occurring,

including repeatedly observing Plaintiff and her trafficker and look-

ing out for what was occurring at the property.

(f)    Defendants knew or should have known of the high prevalence of

sex trafficking generally, in the Atlanta area, and at budget motels

in particular.

10.

A person under the age of 18 cannot consent to having sex in exchange for

money. Any commercial sex involving a person under eighteen (i.e. "minor sex traf-

ficking") is *criminal* sex trafficking under federal and Georgia law whether the mi-

nor had a trafficker/pimp and does not require evidence that the victim was subject

to "force, fraud, or coercion." 18 U.S.C. § 1591(a); O.C.G.A. § 16-5-46(8)(B).

Every person who engages in commercial sex with a minor is trafficking that minor

under 18 U.S.C. § 1591(a)(1).

11.

Defendants chose to ignore, allow, condone, facilitate, support, and/or permit

sex trafficking and other illegal and drug activity at the Motel. Defendants are liable

to Plaintiff for its actions and failures to act. Defendant's liability to Plaintiff is

straightforward:

(a)    The Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18

U.S.C. § 1595(a), provides a cause of action to victims of sex trafficking

6

against "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person ***knew or should have known*** has engaged in an act in violation of" the TVPRA. Defendants knowingly benefited from participation in a venture which it knew or should have known engaged in an act in violation of the TVPRA because in the operation of the Motel, Defendants and their Motel staff (i) rented the room at the Motel to Plaintiff's trafficker, in which Plaintiff, a 16-year-old girl, was sold for sex at the Motel; (ii) collected fees for rental of that room, and (iii) did so notwithstanding that Defendants and their staff knew or should have known that Plaintiff was a victim of sex trafficking at the Motel. As such, Defendants are liable to Plaintiff for her damages under the TVPRA.

(b) Additionally, the Motel staff actively participated and cooperated with Plaintiff's trafficker in his sex trafficking of Plaintiff by accepting bribes from Plaintiff's trafficker and serving as a lookout to ensure Plaintiff could easily bring men from offsite back onto the Motel property who were paying to have sex with Plaintiff.

(c) The Motel constituted a public nuisance under Georgia law because the Motel negligently or recklessly turned a blind eye and permitted illegal activities to occur at the Motel, including rampant prostitution, sex

trafficking, crimes against women, drugs, violence, and other dangerous illegal activity. As a direct result of this nuisance, Plaintiff was sold for sex at the Motel, causing her substantial harm.

12.

Whenever reference is made in this Complaint to any act, deed, or conduct of Defendant Motel, the allegation is that Defendants engaged in the act, deed, or conduct individually or by or through one or more of their officers, directors, agents, employees, staff, or representatives who was actively engaged in the management, operation, direction, control, or transaction of the ordinary day-to-day business and affairs of the Motel.

## Defendants' Knowledge and Complicity of Plaintiff's Trafficking at the Motel

13.

For approximately two months in or around October and November 2016, when she was 16 years old (and turned 17 years old while being trafficked at the Motel), F.F. was illegally harbored, falsely imprisoned, and sold for sex at the Motel. F.F.'s trafficker took her to the Motel because the trafficker knew it would be a good place to sell F.F. for sex.

14.

Once at the Motel, the Motel staff cooperated with and assisted Plaintiff's trafficker for approximately two months, including accepting bribes and drugs from

Plaintiff's trafficker, and keeping a lookout for Plaintiff to make sure she was able to easily bring sex buyers from offsite back to the Motel property.

15.

During her two months at the Motel, Plaintiff would see multiple buyers per day who would each visit her Motel room for short visits.

16.

In addition to having an opportunity to observe this concerning conduct, the Motel cleaning staff and front desk staff also repeatedly observed F.F. with her trafficker and/or sex buyers on multiple occasions.

17.

Despite seeing 16-year-old F.F. have numerous different men visit her Motel room for short visits each day, and despite seeing F.F. walk to the nearby gas station and then return with a different man each time, the Motel cleaning or front desk staff never attempted to stop F.F.'s obvious sex trafficking or even ask F.F. if she needed help. Instead, the cleaning staff actually accepted bribes from the trafficker, and the Motel front desk staff generally did what F.F.'s trafficker requested and left the trafficker alone to run his trafficking operation as long as he continued to pay rent.

18.

While Plaintiff was being trafficked at the Motel, she observed other illegal and drug activity occurring at the Motel.

19.

While Plaintiff was trafficked for sex at the Motel, she exhibited numerous well-known and visible signs of a child sex trafficking victim, of which Defendants and their staff knew or should have known, including her young age, being controlled by an older man, and being escorted by numerous adult male strangers who would visit Plaintiff's Motel room each day for short visits, including many men who she had to walk to the nearby gas station to meet.

20.

By acting as lookouts and refusing to assist the visibly underaged and distressed child, the Motel actively harbored F.F. and facilitated her trafficking and false imprisonment, knowingly furthering her traffickers' operation at the Motel.

**Defendants' Knowledge of Sex Trafficking Generally**

21.

Defendants knew or should have known of the existence of sex trafficking and its illegality more than 20 years ago, since the passage of the Trafficking Victims Protection Act in 2000 and the United Nations' adoption of the Palermo Protocol to prevent, suppress, and punish trafficking in persons.

22.

Defendants knew or should have known that during the relevant period Atlanta was a national hub of sex trafficking and that crime was prevalent in the city,

including at the Motel. According to a well-publicized study commissioned by the U.S. Department of Justice, Atlanta had one of the largest illegal sex trafficking economies in the country. In 2007, Atlanta's sex trafficking economy was worth $290 million annually, and traffickers reported average *weekly* earnings of roughly $33,000.[2] Over the last two decades, sex trafficking has generated billions of dollars in illicit profits in metro Atlanta alone. Defendants have received and retained some of those illicit profits through renting Motel rooms used for the trafficking of Plaintiff.

23.

Defendants knew or should have known of the Atlanta area's well-publicized reputation as an "epicenter for human trafficking, [] particularly child sex trafficking,"[3] and as "the number one city for child sex trafficking."[4]

---

[2] *See* Christian Boone, *Study: Atlanta's Sex Trade Highly Profitable*, Atlanta Journal Constitution, Mar. 13, 2014, https://www.ajc.com/news/crime--law/study-atlanta-sex-trade-highly-profitable/GiuU5vZdoUo5vdUYSaOBNM (last visited Nov. 5, 2025); *see also* Meredith Dank et al., *Estimating the Size and Structure of the Underground Commercial Sex Economy in Eight Major US Cities* 30–32 (2014), https://www.urban.org/research/publication/estimating-size-and-structure-underground-commercial-sex-economy-eight-major-us-cities (last Nov. 5, 2025).

[3] Sally Yates, *Remarks at Justice Department Event Marking National Slavery and Human Trafficking Prevention Month* (Jan. 29, 2015), https://www.justice.gov/opa/speech/acting-deputy-attorney-general-sally-quillian-yates-delivers-remarks-justice-department (last visited November 5, 2025).

[4] *Id*.

11

24.

Defendants knew or should have known that Motels and motels are "a particularly attractive site for criminal activity ranging from drug dealing and prostitution to human trafficking. Offering privacy and anonymity on the cheap, they have been employed as . . . rendezvous sites where child sex workers meet their clients on threat of violence from their procurers." *City of Los Angeles v. Patel*, 576 U.S. 409, 428–29 (2015) (Scalia, J., dissenting, joined by Roberts, C.J. and Thomas, J.).

25.

Defendants knew or should have known the following: The National Human Trafficking Hotline has reported that over 91 percent of the calls it received and obtained information on involving motels and hotels were sex trafficking cases, and another 2.6 percent reported a combination of sex and labor trafficking.[5] A 2012 study found that 63 percent of trafficking incidents occurred in Motels.[6] And the Polaris Project found that "75 percent of [trafficking] survivors . . . reported coming

---

[5] National Human Trafficking Hotline, *National Hotline Cases Occurring in Hotels and Motels: United States 1/1/2012–12/31/2016*, at 3, https://traffickinginstute.org/wp-content/uploads/2024/06/2023-2023-Federal-Human-Trafficking-Report-WEB-Spreads-LR.pdf (last visited Nov. 5, 2025).

[6] Jon Conte et al., *Business Ending Slavery and Trafficking, Inhospitable to Human Trafficking Program Evaluation* 5 (July 2014), https://web.archive.org/web/20210511135432/https.www.bestalliance.org/uploads/5/0/0/4/50047795/itt_program_evaluation.11_without_appendix.pdf.

into contact with Motels at some point" during their exploitation.[7] Unfortunately, "94 percent" also "disclosed they never received any assistance, concern, or identification from Motel staff."[8]

26.

Defendants knew or should have known that attorneys for the Motel industry estimated and reported to Motel industry representatives that eight out of ten human trafficking arrests occur in or around Motels,[9] and that the industry had been warned, among other things, to "Make sure Motel not complicit," "Manager not looking the other way," and "No pay off for silence or lack of curiosity."[10]

27.

Defendants knew or should have known that the organization called End Child Prostitution and Trafficking (ECPAT-USA) launched The Code of Conduct for the

---

[7] Polaris Project, *On-Ramps, Intersections, and Exit Routes: A Roadmap for Systems and Industries to Prevent and Disrupt Human Trafficking* 16 (2018), https://polaris-project.org/wp-content/uploads/2018/08/A-Roadmap-for-Systems-and-Industries-to-Prevent-and-Disrupt-Human-Trafficking-Hotels-and-Motels.pdf (last visited Nov. 5, 2025).

[8] *Id.* at 23.

[9] Rich Keating, *Human Trafficking: What Is it and How It Impacts the Hospitality Industry* 6 (presentation at AHIA Sprint Conference 2013), https://web.archive.org/web/20191030203754/http://www.ahiattorneys.org/aws/AHIA/asset_manager/getfile/92983.

[10] *Id.* at 19.

Protection of Children from Sexual Exploitation in Travel and Tourism (the "Code")

in the United States in 2004.[11]

28.

Defendants knew or should have known that the Code, which lays out well-

established best practices for the hospitality industry to identify, address, and deter

sex trafficking, identifies six reasonable and logical steps Motels and motels can

take:

(a)    establish corporate policy and procedures against sexual exploita-
       tion of children;

(b)    train employees in children's rights, the prevention of sexual exploi-
       tation and how to report suspected cases;

(c)    include a clause in further partner contracts stating a common repu-
       diation and zero tolerance policy of sexual exploitation of children;

(d)    provide information to travelers on children's rights, the prevention
       of sexual exploitation of children and how to report suspected
       cases;

(e)    support, collaborate and engage stakeholders in the prevention of
       sexual exploitation of children; and

---

[11] *See The Code*, ECPAT-USA, www.ecpatusa.org/code/ (last visited June 31,
2025).

14

(f)     report annually on the company's implementation of Code-related

activities.

29.

Defendants knew or should have known that ECPAT is only one of several

high-profile organizations that have for years given Motels and motels the tools to

address the scourge of sex trafficking at Motels.

30.

Defendants knew or should have known that during the relevant period the

Department of Homeland Security ("DHS") published guidelines to help Motels and

motels detect and respond to human trafficking. DHS's guidelines instruct house-

keeping, maintenance, front desk, and security, among other Motel personnel, to be

vigilant in looking for signs of human trafficking at Motels and motels, such as:

(a)     persons who show signs of malnourishment, poor hygiene, fatigue,

sleep deprivation, untreated illness, injuries, or unusual behavior;

(b)     persons who lack freedom of movement or are constantly moni-

tored;

(c)     persons who have no control over or possession of money or ID;

(d)     persons who dress inappropriately for their age or have lower quality

clothing compared to others in their party;

(e)    requests for room or housekeeping services (additional towels, new linens, etc.), but denial of Motel staff entry into the room;

(f)    the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

(g)    extended stay with few or no personal possessions in the room;

(h)    excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.);

(i)    the same person reserves multiple rooms;

(j)    a room is rented hourly, less than a day, or for an atypical extended stay;

(k)    attempts to sell items to or beg from patrons or staff;

(l)    cars in the parking lot regularly parked backward, so the license plates are not visible;

(m)    loitering and solicitation of male patrons;

(n)    waiting at a table or bar and picked up by a male (trafficker or customer);

(o)    persons asking staff or patrons for food or money; and

(p)    persons taking cash or receipts left on tables.

31.

Without a market—a conveniently located and anonymous place to confine humans, exchange money, and have sex—sex trafficking would cease to exist. In Plaintiff's case, the Motel, for a fee, provided this market for Plaintiff to be confined and sold.

## COUNT I
## STATUTORY LIABILITY: SEX TRAFFICKING
## 18 U.S.C. § 1595

32.

Plaintiff incorporates the paragraphs above as if fully restated herein.

33.

In violation of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a), Defendants knowingly benefitted from participation in a venture that Defendants knew or should have known engaged in acts in violation of the TVPRA.

34.

Defendants knowingly benefitted from Plaintiff's sex trafficking by receiving revenue generated by the operation of the Motel, including the revenue generated for the room in which Plaintiff was trafficked. Each day Plaintiff was trafficked at the Motel, Defendant knowingly benefitted by receiving money from Plaintiff's trafficking in the form of room-rental fees.

35.

Defendants participated in a Motel venture and knew or should have known that their operation of the Motel violated the TVPRA by harboring and falsely imprisoning Plaintiff so that she could be sold for sex at the Motel. Defendants also participated in a venture by actively cooperating with, accepting bribes from, serving as a lookout for, and allowing Plaintiff's sex trafficker to harbor, falsely imprison, and traffic Plaintiff at Defendant's Motel.

36.

As part of her sex trafficking, Plaintiff was falsely imprisoned at the Motel. Defendant's harboring F.F. during her sex trafficking constituted false imprisonment. At times, F.F.'s false imprisonment at the Motel was independent of any other aspect of her trafficking, such as sexual encounters, assaults, or batteries she may have endured.

37.

The venture in which Defendants participated was in or affecting interstate commerce.

38.

Defendants knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants' agents, employees, and representatives,

participated in Plaintiff's minor sex trafficking at the Motel. Defendants knew or should have known of this participation.

39.

Defendants also knew or should have known the venture engaged in acts in violation of the TVPRA because Defendants' agents, employees, and representatives knew or should have known of other sex trafficking and illegal criminal activity occurring at the Motel.

40.

Defendants are directly and vicariously liable under 18 U.S.C. § 1595(a) for the actions of their agents and representatives.

41.

Plaintiff has suffered substantial physical, emotional, and psychological harm and other damages as a direct and proximate result of Defendants' participation in this venture.

42.

Defendants are liable to Plaintiff for her damages in an amount to be proven at trial, including reasonable attorneys' fees and punitive damages under 18 U.S.C. § 1595(a).

43.

All Defendants are jointly and severally liable for damages arising from the indivisible injuries they caused Plaintiff, whose damages were proximately caused by the acts discussed in this count.

## COUNT II
## NUISANCE

44.

Plaintiff incorporates the Paragraphs above, as if fully set forth herein.

45.

O.C.G.A. § 41-1-1 provides that "A nuisance is anything that causes hurt, inconvenience, or damage to another and the fact the act done may otherwise be lawful shall not keep it from being a nuisance.  The inconvenience complained of shall not be fanciful, or such as would affect only one of fastidious taste, but it shall be such as would affect an ordinary, reasonable man."

46.

O.C.G.A. § 41-1-2 provides that "Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals."

47.

O.C.G.A. § 41-1-3 provides that "A public nuisance generally gives no right of action to any individual.  However, if a public nuisance in which the public does not participate causes special damage to an individual, such special damage shall give a right of action."

48.

O.C.G.A. § 41-3-1 provides that "Whosoever shall knowingly erect, establish, maintain, use, own, or lease any building, structure, or place for the purposes of sexually related charges shall be guilty of maintaining a nuisance; and the building, structure, or place, and the ground itself in or upon which such sexually related charges occurred or were conducted, permitted, carried on, continued, or shall exist, and the furniture, fixtures, and other contents of such building or structure shall be deemed to be a nuisance."

### Public Nuisance

49.

The Motel's history of rampant crime and illegal sex activity created a spillover effect that led to other crime occurring in the surrounding area.

50.

The Motel caused or contributed to a blighting effect on the surrounding community, so that the Motel negatively damaged all persons who came within the

sphere of operation of the crime, sex trafficking, and prostitution at the Motel, although the effects on each person may have varied.

51.

The illegal prostitution and sex trafficking nuisance occurring at the Motel had an appreciable blighting effect on the surrounding community, permitting persons of questionable character, and encouraged idleness, loitering, vagrancy, and had a tendency to breed crime and debauch the morals of the community.

52.

The acts and omissions of Defendants in permitting prostitution and sex trafficking at the Motel caused special damages to Plaintiff, as she was the victim of child sex trafficking at Defendants' nuisance motel and suffered damages to her health, including mental and emotional harm, pain and suffering, and Defendants are liable to Plaintiff for all such damages.

**Public Nuisance Per Se**

53.

The Motel constituted a statutory nuisance per se under Georgia law because the Motel knowingly and/or negligently turned a blind-eye and permitted illegal sexually related crimes to occur at the Motel including sex trafficking.

54.

A business where illegal practices are permitted constitutes a nuisance.

55.

A business, like the Super 8, that allows prostitution and sex trafficking is a per se public nuisance under Georgia law. *Brindle v. Copeland*, 145 Ga. 398, 89 S.E. 332 (1916) ("A lewd house is per se a 'public nuisance.'")

56.

Plaintiff was directly harmed as a result of the sex crime nuisance at the Super 8 that permitted illegal sexual activity to occur there.

57.

Defendant is liable for nuisance (public nuisance and/or per se public nuisance) by reason of its failure to remedy the dangerous condition of prostitution and sex trafficking that persisted over a period of time as a continuous and repetitious condition and of which Defendant has express notice and knowledge, and whereby Plaintiff was a direct victim of such activity.

**DAMAGES**

58.

Plaintiff incorporates the paragraphs above as if fully restated herein.

59.

As a proximate and foreseeable result of Defendants' violations of the TVPRA and Georgia law, Plaintiff sustained personal injuries, mental and emotional pain and suffering, experienced mental anguish, and suffered other damages as will be proven at trial. Plaintiff brings each and every claim permissible under Georgia

23

and federal law against Defendants for injuries suffered in the incident at issue, and to recover for all special damages, economic losses, medical expenses, necessary expenses, pain and suffering, and all compensatory, special, actual, general and punitive damages permissible under Georgia and federal law. Plaintiff seeks all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia and federal law, including, but not limited to:

    (a)   Personal injuries;

    (b)   Past, present and future conscious pain and suffering;

    (c)   Loss of enjoyment of life;

    (d)   Medical expenses;

    (e)   Mental anguish and emotional distress;

    (f)   Loss of past, present, and future wages;

    (g)   Incidental expenses;

    (h)   All special, compensatory, economic, punitive, and other damages permissible under Georgia and federal law; and

    (i)   Consequential damages to be proven at trial.

60.

Plaintiff is entitled to an award of punitive damages without limitation or cap because the actions of Defendants and their employees were willful and wanton and

24

showed an entire want of care, which raises the presumption of a conscious indifference to consequences.

61.

Defendants' actions evidence a species of bad faith, were and are stubbornly litigious, and have caused Plaintiff undue expense. Thus, Plaintiff is entitled to recover her necessary expenses of litigation, including an award of reasonable attorneys' fees and expenses required by this action. (O.C.G.A. §§ 13-6-11, 9-11-68 and 9-15-14, and 18 U.S.C. § 1595(a)). Furthermore, Plaintiff is entitled to all expenses of litigation and attorneys' fees pursuant to all other Georgia and federal statutory and common laws.

WHEREFORE, Plaintiff prays for a judgment to be awarded to her and against Defendants for the following:

(a)    Process issue as provided by law;

(b)    Plaintiff be awarded actual damages in amounts to be shown at trial from Defendants;

(c)    Plaintiff be awarded all general, special, compensatory, economic, consequential, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from Defendants;

(d)    Plaintiff be awarded a trial by jury; and

25

(e)    Plaintiff have such other relief as this Court deems just and appro-

priate under the circumstances.

TRIAL BY JURY IS HEREBY DEMANDED.

Respectfully submitted, this 6th day of November 2025.

ANDERSEN, TATE & CARR, P.C.

*/s/ Tyler Dillard*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
TYLER A. DILLARD
Georgia Bar No. 115229
tdillard@atclawirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile

## CERTIFICATE OF COMPLIANCE

Under Local Rules 5.1(C) and 7.1(D), I hereby certify that the foregoing filing complies with the applicable font type and size requirements and is formatted in Times New Roman, 14-point font.

ANDERSEN, TATE & CARR, P.C.

*/s/ Tyler Dillard*

PATRICK J. MCDONOUGH
Georgia Bar No. 489855
pmcdonough@atclawfirm.com
TYLER A. DILLARD
Georgia Bar No. 115229
tdillard@atclawirm.com
JONATHAN S. TONGE
Georgia Bar No. 303999
jtonge@atclawfirm.com
JENNIFER M. WEBSTER
Georgia Bar No. 760381
jwebster@atclawfirm.com

One Sugarloaf Centre
1960 Satellite Boulevard, Suite 4000
Duluth, Georgia 30097
(770) 822-0900 | Telephone
(770) 822-9680 | Facsimile